UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-302-GWU

JOANN MCQUEEN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Joann McQueen brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

08-302  Joann McQueen

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

08-302  Joann McQueen

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that McQueen, a 46-year-old former day care worker with a "marginal" education, suffered from impairments related to borderline intelligence, being status post cardiovascular accident and depression.  (Tr. 17, 22).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of work at all exertional levels.  (Tr. 20-21).  Since the claimant would still be able to perform her past relevant work as well as a significant number of other jobs in the national economy, she could not be considered totally disabled.  (Tr. 22-23).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that McQueen could return to her past relevant work, the ALJ relied heavily upon the information provided by Vocational Expert Linda Taber.  The hypothetical question presented by the ALJ included no exertional limitations with such non-exertional restrictions as (1) a "fair" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with

work stresses, maintain attention and concentration, handle complex job instructions. maintain personal appearance, behave in an emotionally stable manner, and demonstrate reliability; (2) a "poor" ability to function independently; and (3) a "fair to poor" ability to relate predictably in social situations. (Tr. 384-385). In response, Taber testified that the plaintiff's past work as a day care worker could still be performed. As an alternative, the witness also identified a significant number of other jobs which could still be performed as well. (Tr. 385-386). Therefore, assuming that the vocational factors considered by Taber fairly characterized the claimant's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

    The ALJ properly concluded that McQueen did not suffer from any physical restrictions despite her history of a cardiovascular accident. Dr. Jules Barefoot, an examining consultant, opined that the plaintiff had no limitation with regard to sitting, standing, moving about, lifting, carrying, handling objects, hearing, and seeing. (Tr. 235). Dr. John Rawlings (Tr. 239) and Dr. Sudhideb Mukherjee (Tr. 260), the non-examining medical reviewers, each opined that the claimant did not suffer from any physical limitations. These reports provide substantial evidence to support this portion of the administrative decision.

    The court turns to the issue of McQueen's mental condition. In assessing the plaintiff's mental status, the ALJ relied primarily upon the opinion of Psychologist

08-302 Joann McQueen

Doug McKeown who testified at the hearing as a medical advisor. (Tr. 22). The ALJ rejected the opinion of Psychologist Reba Moore, an examining consultant. (Id.). The claimant strongly objects to the ALJ's action on this question and this dispute constitutes the main issue in contention between the parties.

McQueen argues that the ALJ erred in concluding that she did not meet the requirements of § 12.05C of the Listing of Impairments concerning mental impairments. This Listing requires a claimant to produce:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R., Part 404, Subpart P, App. 1, § 12.05C. The regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence supports onset of the impairment before age 22." 20 C.F.R., Part, 404, Subpart P, App. 1, § 12.05. Thus, to satisfy the requirements of § 12.05C, a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical impairment.

Intelligence testing administered by Moore produced a Verbal IQ score of 62, a Performance IQ score of 70 and a Full Scale IQ score of 63, all scores within Listing range. (Tr. 313). The examiner opined that these scores were valid for her

<u>current</u> functioning. (Id.). Mild mental retardation was diagnosed by the psychologist. (Tr. 317). However, Moore also stated that "I have no records of previous functioning from which to form a baseline for comparison purposes." (Tr. 313). The psychologist also suspected some regression in functioning had occurred from the claimant's prior level of functioning. (Id.). McKeown reviewed this report, as well as the entire record, and stated that there were no records indicating the required deficits in adaptive functioning which would be required to meet the Listing. (Tr. 373-374). The medical advisor opined that McQueen's life-long level of functioning in maintaining a family, driving a vehicle and working for extended time periods was not consistent with mild mental retardation. (Tr. 374). The ALJ concluded that the required deficits in adaptive functioning had not been established and, so, found that § 12.05C had not been met. (Tr. 19). This action appears appropriate. In addition to the opinion of McKeown, the undersigned notes that Moore herself states that she lacks sufficient information concerning the claimant's earlier adaptive functioning and even opined that the plaintiff has deteriorated from a higher level of functioning. Therefore, the court finds that the ALJ properly concluded that § 12.05C requirements had not been met.

McQueen asserts that the <u>Diagnostic and Statistical Manual of Mental Disorders</u> precludes a diagnosis of mild mental retardation in the absence of evidence of significant sub-average intellectual functioning prior to the age of 18.

08-302  Joann McQueen

The plaintiff asserts that since a diagnosis of mild mental retardation was made by Moore, then she must have found that the required deficits in adaptive functioning existed.  However, as previously noted, the examiner specifically indicated that she had no information concerning earlier levels of functioning and even indicated a suspicion that the plaintiff had functioned at a higher level in the past.  (Tr. 313).  Thus, this information from the Diagnostic and Statistical Manual of Mental Disorders actually suggests that Moore's diagnosis was in error.

McQueen also cites the unpublished opinion of West v. Commissioner of Social Security, 240 Fed. Appx. 692, 2007 WL 1991059 (6th Cir. 2007) for the proposition that she was not required to submit IQ testing dated from before her 22nd birthday to meet the Listing.  In the present case, the plaintiff was not asked to do this.  No mental health source of record, including Moore, identified deficits in adaptive behavior which manifested themselves before the age of 22.  Therefore, the West case has no application to this fact situation.

In addition to mild mental retardation, Moore diagnosed schizophrenia.  (Tr. 317).  The examiner completed a Mental Medical Assessment of Ability to do Work-Related Activities Form upon which she identified a number of very severe mental limitations with McQueen's ability to function in most areas rated as either "poor" or "none."  (Tr. 319-320).  The ALJ rejected these restrictions as binding.  (Tr. 22).

11

08-302  Joann McQueen

McKeown, the medical advisor, also identified a number of mental restrictions.  (Tr. 332-333).  In assessing McQueen's mental limitations, the ALJ relied upon the opinion of the medical advisor in preference to that of Moore.  (Tr. 22).  The mental factors presented to the vocational expert during the administrative hearing were those noted by McKeown.  (Tr. 332-333, 384-385).  An ALJ may rely upon the opinion of a non-examining source over that of an examining source when the non-examiner clearly states the reasons for his differing opinion.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  In the present action, McKeown reported reviewing the record and opined that it revealed the existence of a psychotic disorder.  (Tr. 373).  He found that the plaintiff's mental condition did not meet a Listing.  (Tr. 376).  As previously noted, the advisor reviewed Moore's report and opined that he did not believe that the overall record indicated the deficits in adaptive functioning which were required for § 12.05C.  (Tr. 373-374).  McKeown found it questionable that Moore administered the MMPI to the claimant after achievement testing revealed that she lacked the literacy skills needed to complete this examination.  (Tr. 374).  The advisor did not believe the claimant could have completed this test, which she eventually did, if Moore's testing results were accurate.  (Id.).  McKeown noted that the record revealed no organic problems resulting from the claimant's cardiovascular accident.  (Tr. 375).  The advisor also reported that treatment records from the Cumberland River Comprehensive Care

Center indicated that McQueen was stable and functioning well as long as she took her medication. (Tr. 375-376). McKeown indicated that Moore's diagnosis of schizophrenia did not appear well-supported because this would be a life-long problem and would not just appear with middle age. (Tr. 375). Therefore, McKeown gave sufficient reasons for the ALJ to rely upon his opinion over that of Moore.

Other records in evidence do not reveal the existence of a totally disabling mental condition. McQueen was hospitalized at Appalachian Regional Hospital in October of 2004 following a period of mental confusion and paranoia. (Tr. 173). The hospital staff did a work-up to rule out possible metabolic or organic causes for this. (Tr. 171). An MRI Scan of the head revealed small lacunar infarctions in the basal ganglia. (Id.). No sign of acute infarction was reported. (Id.). A CT Scan of the head was normal. (Id.). Muscle bulk and tone were normal upon physical examination. (Tr. 176). There was no facial asymmetry. (Id.). Gait was normal. (Id.). The claimant was discharged home in stable condition. (Tr. 172). Long-term mental restrictions were not assessed.

As previously noted, McQueen sought treatment for her mental problems at Cumberland River. She was diagnosed as suffering from a psychotic disorder and a depressive disorder in November of 2004. (Tr. 208). The plaintiff's Global Assessment of Functioning (GAF) was rated at 55 to 60. (Id.). Such a GAF

suggests the existence of "moderate" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.–Text Revision). More severe mental limitations than those found by the ALJ were not identified. (Tr. 195-214, 298-308).

In April of 2007, McQueen was again hospitalized at Appalachian following an episode in which she tried to harm family members and herself. (Tr. 283). Delusions and auditory hallucinations were noted upon admission. (Id.). Psychosis was diagnosed. (Id.). Her GAF was rated at 30, indicating the existence of "serious" impairment of functioning. (Id.). The patient was placed on Haldol and responded well to the medication. (Tr. 284). Her condition stabilized and she was discharged with a GAF rating of 57, suggesting the existence of "moderate" psychological symptoms. (Id.). Again, long-term mental limitations were not identified. Therefore, this appeared to be short-term exacerbation of the claimant's condition from which she quickly recovered.

Psychologists Thompson Prout (Tr. 215-227) and Ed Ross (Tr. 261-274) each reviewed the record and opined that McQueen's mental problems did not meet or equal a section of the Listing of Impairments. Both reviewers indicated that the plaintiff would be "moderately" impaired in such areas as handling detailed instructions, maintaining attention and concentration, interacting appropriately with the general public, and responding appropriately to changes in the work setting.

(Tr. 228-231, 275-279). These factors were essentially consistent with the mental limitations presented to the vocational expert.

McQueen also argues that the ALJ erred by failing to reference the fact that Prout and Ross both indicated that she had experienced "one or two" episodes of decompensation under the "B" criteria on the Psychiatric Review Technique (PRT) forms they completed. (Tr. 224, 271). Significantly, neither reviewer thought that the plaintiff's mental problems were severe enough to meet a Listing requirement. (Tr. 215-227, 261-274). The ALJ's findings were essentially consistent with the mental limitations identified on the Mental Residual Functional Capacity Assessment Forms completed by the reviewers. (Tr. 228-231, 275-279). To the extent that the somewhat differently worded mental limitations noted by the reviewers might be seen as more severe than those presented in the hypothetical question, the court notes that these opinions were offset by that of McKeown who had the opportunity to see and comment upon the entire record. Furthermore, since the plaintiff suffered from only non-exertional mental limitations, Social Security Ruling 85-15 indicates that a finding of disabled status would only be appropriate if the mental condition imposed a "substantial" loss of ability in such areas as handling simple instructions, responding to supervision, co-workers, and usual work situations or dealing with the changes in a routine work situation. Clearly, the

"moderate" restrictions noted by the reviewers do not impose such a loss. Therefore, the court finds no error.

McQueen asserts that the ALJ did not properly evaluate the credibility of her mental impairments. However, the ALJ noted a number of reasons for this finding, including the wide range of activities she engaged in, her ability to maintain personal appearance, and the mild restrictions indicated in the record by McKeown. (Tr. 19-20). While the plaintiff experienced a couple of severe exacerbations in her mental condition, these were noted to have been related to her having discontinued taking medication and stopping mental health treatment. (Tr. 18). The ALJ noted that the record indicated the claimant was stable when she was compliant with her medications and obtaining mental health treatment. (Id.). Therefore, the court must reject McQueen's argument.

Finally, the ALJ questioned the credentials of Moore, expressing doubt about her level of education and area of specialization. (Tr. 22). McQueen notes that as a licensed psychologist, Moore was an "acceptable medical source" under the federal regulations at 20 C.F.R. § 404.1513 with years of experience doing these types of consultative examinations before the Social Security Administration. The court agrees that this particular criticism of Moore was not well founded. However, the ALJ had numerous other reasons to reject her opinion as binding. Therefore, the error is harmless.

08-302 Joann McQueen

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 31st day of July, 2009.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**